PETER DAVID *vs.* ANTONE COURY ZILAH & others.

Bristol. October 24, 1949. — February 3, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Limitations, Statute of. Debt. Fraudulent Conveyance.*

The statute of limitations, G. L. (Ter. Ed.) c. 260, § 2, which was pleaded, barred relief to the plaintiff in a suit in equity to establish indebtedness of one of the defendants to the plaintiff arising from a loan and to reach and apply in satisfaction thereof real estate alleged to have been fraudulently conveyed by the principal defendant to another defendant, where it appeared that nothing had been paid on the loan for more than sixteen years previous to the commencement of the suit and that there was nothing to take the claim out of the operation of the statute.

In a suit in equity to establish indebtedness of two of the defendants on a judgment obtained by the plaintiff against them and to reach and apply in satisfaction thereof real estate alleged to have been fraudulently conveyed by such two defendants to a third defendant and by him to a fourth, there was error in the final decree in establishing liability of all four defendants to the plaintiff on the judgment and in ordering that execution issue against all four for any deficiency remaining after sale of the real estate and application of the proceeds thereof to the indebtedness; such relief should have been ordered against the two judgment debtors only.

A conveyance of real estate, made by a husband and his wife to their son without consideration as "a general family arrangement to keep the title . . . out of the name of" the husband, who "continued to be in fact the beneficial owner" and was so regarded by the wife, who participated in the conveyance knowing "the reasons therefor," was made with actual intent to hinder, delay and defraud creditors and, under G. L. (Ter. Ed.) c. 109A, § 7, was fraudulent as to a creditor of the husband and the wife upon an indebtedness arising after it was made.

BILL IN EQUITY, filed in the Superior Court on October 28, 1947.

By order of *Sullivan,* J., there were entered an interlocutory decree confirming the report of a master, and a final decree. The defendants appealed.

*M. A. Goldberg,* (*F. M. Thomas* with him,) for the defendants.

*G. Walsh,* (*S. E. Bentley & D. P. David* with him,) for the plaintiff.

SPALDING, J. By this bill in equity the plaintiff seeks to establish the indebtedness of the defendant Antone Coury arising out of a loan made to him in 1928, and also his indebtedness and that of the defendant Julia Coury arising out of a judgment obtained against them in 1947.[1] The plaintiff further seeks to reach and apply in payment of these debts the interest of these defendants in two parcels of real estate which, it is alleged, were conveyed by them to the defendants Joseph Coury and Ernest Coury with the intent to hinder, delay and defraud creditors. The case was referred to a master under the usual rule. See Rule 86 of the Superior Court (1932).

We summarize the findings of the master as follows: The defendants Antone and Julia Coury are husband and wife and are the parents of the defendants Joseph and Ernest Coury. On June 29, 1928, the plaintiff lent $1,750 to Antone Coury. The loan was not evidenced by any writing. Payments of principal and interest on this indebtedness were

[1] In the bill these defendants were called Antone Coury Zilah and Julia Coury Zilah, but at the hearing before the master it was stated that they were known by the name "Coury" rather than Zilah and he referred to them as "Coury" in his report. We shall do likewise.

made by Antone down to March 2, 1931, at which time the balance due was $1,200. Nothing was paid thereafter. On December 17, 1935, the plaintiff lent $1,000 to Antone and Julia and they gave him their note for that amount. At that time Antone orally promised to pay the balance of the 1928 loan. On October 3, 1947, the plaintiff obtained a judgment against Antone and Julia on this note in the amount of $1,711.40 and costs, no part of which has been satisfied.

For about ten years prior to June 4, 1931, Antone and Julia held title to a parcel of real estate (consisting of a house and lot) at 7 Franklin Street, New Bedford. The property was owned subject to a bank mortgage of $2,100. For about the ·same period Antone was the owner of a house and lot at 1235 Pleasant Street in New Bedford. This property was owned subject to a bank mortgage of $1,700. On June 4, 1931, both of these parcels were conveyed by Antone and Julia Coury (by deeds which were recorded on June 15, 1931) to their son Joseph Coury, who then was twenty-one years of age. Each parcel was then worth more than the amount of the mortgage on it. Joseph paid nothing for these conveyances. He assumed the mortgage on the Franklin Street property but Antone and Julia were not discharged. The Pleasant Street property was conveyed subject to the mortgage. Joseph at that time was unmarried and lived with his parents in the Franklin Street house. After the conveyances Antone never paid any rent to Joseph for occupancy of this property.

Sometime in June or July, 1931, the plaintiff learned of the conveyances from a newspaper and spoke to Antone about them. Antone informed the plaintiff that the transfers did not "mean a thing" and that he made them to save himself; he assured the plaintiff that he would be paid. At that time, as noted above, Antone owed the plaintiff $1,200 on the 1928 loan.

Joseph retained title to the properties conveyed to him until August 14, 1944, when he conveyed them to his brother Ernest. These conveyances took place approximately

three weeks before Joseph's marriage. Ernest, who at that time was unmarried, was then in the army and was either in India or was on his way there. No consideration was paid by Ernest for these conveyances. He later assumed the mortgage on the Franklin Street property. At the time of these conveyances the mortgage on the Pleasant Street property had been discharged. The conveyances of 1931 and 1944 "were all a part of a general family arrangement to keep the title to the houses out of the name of Antone Coury . . . [who] has continued to be in fact the beneficial owner" of them. Julia's coöwnership of the Franklin Street property was, "at best, a family arrangement, and . . . in fact she considered that . . . [property] to be owned by her husband, or in any event, she participated in the 1931 conveyance to Joseph and knew the reasons therefor." Other findings with respect to these transfers need not be recited. It is enough for present purposes to state that the master concluded that they were made for the purpose of hindering, delaying and defrauding creditors. This conclusion is amply supported by the subsidiary findings.

The report of the master was confirmed by an interlocutory decree, and a final decree was entered establishing the liability of all of the defendants with respect to the 1928 indebtedness and that arising out of the judgment. The decree further provided that, if this indebtedness was not paid within twenty days from the date of the decree, the Franklin and Pleasant street properties were to be sold by a special master and the proceeds of the sale, after satisfying mortgage indebtedness and defraying the expenses of the sale, were to be applied to the indebtedness. The defendants appealed.

The decree was erroneous in permitting recovery for the balance due on the 1928 loan. The statute of limitations, which was pleaded, is a bar. G. L. (Ter. Ed.) c. 260, § 2. The "statute . . . operates with us ex vigore suo, in equity as well as at law." *Farnam* v. *Brooks*, 9 Pick. 212, 243. *Stoneham Five Cents Savings Bank* v. *Johnson*, 295 Mass.

390, 395. *Ballentine* v. *Eaton,* 297 Mass. 389. Nothing was paid on the loan after March 2, 1931. Nor did the parties to be charged at any time sign an acknowledgment or promise in writing with respect to it. See G. L. (Ter. Ed.) c. 260, § 13. The present suit was commenced in October, 1947. There are no circumstances here that would take this claim out of the operation of the statute.

In another respect the final decree was erroneous. It establishes liability on the part of the defendants Joseph and Ernest with respect to the indebtedness arising. out of the judgment, and it provides that if the proceeds derived from the sale of the real estate are insufficient to pay the amount of the plaintiff's claim then executions are to issue against all of the defendants "for an amount equivalent to such deficiency." But the judgment ran only against Antone and Julia, and it was error to establish liability with respect to it as against anyone but them.

In other respects the decree of the court below was right. The facts found by the master show that the conveyances to Joseph and Ernest were made with the actual intent to hinder, delay, and defraud creditors. It is true that in 1931, when the conveyances were made to Joseph, the liability on which the judgment was based had not arisen, but that is of no consequence. A conveyance made with actual intent to defraud either present or future creditors is fraudulent as to both present and future creditors. G. L. (Ter. Ed.) c. 109A, § 7. *Themo* v. *Themo,* 296 Mass. 190, 192. And "Where a conveyance . . . is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase . . ." have the conveyance set aside to the extent necessary to satisfy his claim. G. L. (Ter. Ed.) c. 109A, § 9. See *Service Mortgage Corp.* v. *Welson,* 293 Mass. 410, 413; *Walworth Co.* v. *Locke Stevens & Sanitas, Inc.* 300 Mass. 557, 559; *Buckley* v. *John,* 314 Mass. 719, 726–727. Since neither Joseph nor Ernest paid any consideration for the properties, they do not come within the exception

mentioned in § 9, and the plaintiff was entitled to set aside the conveyances to them to the extent necessary to satisfy the indebtedness of Antone and Julia arising out of the judgment. The conveyances to Ernest stood no better than those to Joseph.

The interlocutory decree is affirmed. The final decree is reversed and a new decree is to be entered in conformity with this opinion.

*So ordered.*